Good morning. Good morning. May it please the court, Stephen Manning for the petitioners. Okay. And I would like to reserve with the court's permission four minutes for rebuttal. All right. Counsel, please be reminded that the time shown is your total time remaining. Thank you. I appreciate that, Your Honor. Ms. Cortez Tellez, mother of three, monolingual Spanish speaker, fleeing domestic violence from Mexico, representing herself in immigration court, did nearly everything right. With no schooling in the law or regulations or understanding the burdens and with no counsel, she appeared at all of her immigration court hearings here in Portland, Oregon, several hours away from her home in Southern Oregon. She filed all of her change of address forms. She lodged her asylum application. She then completed and timely filed an English version of her asylum application. She prepared the physical evidence of her injuries for the court. She obtained corroborating evidence for her claim from Mexico, originally in Spanish, that she then translated and submitted in English to the court. She had all the right number of copies for service. She assembled fact witnesses all ready to testify in support of her claim. And she did all of those things without a she filed those instructions. Now, the one thing that didn't happen, and the reason why we're here arguing today, is she didn't get her fingerprints taken, the biometrics process. Now, the record shows that the immigration judge explained to her what the biometrics were about, but that's not the explanation that matters here. The instructions that matter are the written instructions that the Department of Homeland Security, DHS, is required to initiate the biometrics process. There'd be no legal authority for an immigration judge to penalize her by entering an abandonment order. Now, just as importantly, there'd be no way for her to practically comply either, because it's those written instructions that sort of provide the nitty-gritty, the actual how to do it, where to file, when to file, who to call. Council, I think the trouble I have with the BIA noted is that there appears to be some discussion in the transcript about a document being handed to your client, and then at no point, I think later at her hearing when she is questioned by the IJ, that she just says, I forgot. She doesn't say, I didn't receive the instructions. And then there is no testimonial evidence, no declaration, or anything from your client saying, I did not burden of the biometrics compliance. How do you get around the fact that there's no evidence that your client's not even attesting that she didn't receive the instructions? Thank you, Your Honor. What were the instructions? They're not in the record. And so the contents of what, wherever those instructions were, those written instructions, the contents of those instructions are what the immigration judge based his order of abandonment on. And the content of those instructions, the actual substance of words that would have been in the writing, would be the thing that Ms. Cortez needed to comply with. And that's not in the record. And without that in the record, the immigration judge, the agency, has to confine its decision to materials that are in the record. And to disentitle her from having her asylum application heard on the merits, based on an extra record evidence, would, wouldn't, I mean, that would be arbitrary and capricious. Sorry, go ahead, Judge Rico. We have a number of cases saying that there's a presumption that the government complying with its obligations. There is some inference that can be drawn from the transcript that a document was handed to the client. And again, we have no evidence. You have your client saying on the record that she just forgot. So again, no, no affirmative claim that she did not in fact receive the instruction. So why isn't there, you know, at least substantial evidence given the presumption that the government acts in accordance with its obligations to support the finding that the government complied? I think there's two, Your Honor. So one, we don't disagree that something, I think we agree, we concede that she was handed an EID notice. The letter E, the letter I, the letter D. Now the Board of Immigration Appeals states, as a matter of fact, that it's not clear what that form is. And I think that, that holding by the Board of Immigration Appeals indicates that no one, that that form, whatever those instructions, which are not in the record, like that, that that fact alone means that the regular procedures were not filed. And so that's one. Two, when she says that she forgot, I think there's other pieces. So when she says the words, I forgot, I think as the court must do, reading generously the record for someone who is unrepresented at the time, proceeding as she was, that there's other statements that are contextualized, I forgot. She actually says, I forgot. But then she also says, I thought that was going to happen today. And there's actually nothing in the record indicating that that's not what was going to happen, because those written instructions aren't there to say that she's actually wrong. I guess what I'm confused about your argument, the judge, at the time when she was given the EID, twice tells her specifically what the EID requires that's relevant to this case. He says, you are required to send a copy of your application to the address there. Then they will send you an appointment notice to go get fingerprint. And then later on, he repeats, you send a copy to them, and then they'll send you a paper back telling you where you need to go, and when you should go to get fingerprinted. Is there any basis for your supposing that the written instructions were any different from what the judge twice summarized there in his oral statements? I think so, Your Honor. So Ms. Cortez-Telles expressed confusion when she received the, she made inquiries like, this is the document that says that? Ms. Cortez says, this is the document that tells me where to send that? And the judge actually didn't directly respond. The judge continued explaining. The judge was trying to be very helpful, and we do not disagree that the judge provided advisals that the immigration judge is required to do. The written instructions are the key to the process. And the written instructions, as we learned in Gonzalez-Feliz, the written instructions in that case contained very specific information on what to do and how to do it. There was even a phone number in those instructions that the applicant was supposed to call, and they didn't. Here, we don't have that information. What are you suggesting the government should have done, and by your argument, would have to do in every single case to show that what they handed over to a petitioner was, in fact, the instructions that are required? And we only have an audio transcript. And are they supposed to read into the record when the document I'm handing to them is this, and make a photocopy and submit it? What exactly is your contention would be meeting the government's burden here? The government would met its burden if it would have submitted the document to the court. It's serving the document. It's served in an open court. There's no reason why we... There's nothing in the record that indicates why the government would not also submit it to the court. And if the court wants to actually use that as a basis to order someone's deportation, the actual contents of that, the court should require that to be in the record. The immigration court should require that to be in the record. The agency should require that to be in the record, because to make a decision based on the contents of a piece of evidence that's not in the record would be arbitrary and capricious, and would be on the confines of the statute. Is this a standard form? I'm sorry? Is this form, the EID, a standard form? I don't know what the... Your Honor, with all due respect, I don't know what an EID notice is. The board does... indicates it doesn't know what it is. It's not in the record. I don't know what an EID notice is. The instructions that this government's supposed to give, though, those are a standard form? The regulations require that the government create a standardized form to provide... that the USCIS or DHS create a standardized form for the provision of the biometrics instructions, yes. They're in control of what that looks like and how they do that and the contents of that, yes. But in context, that form was discussed in conjunction with the fingerprint requirement. Is that fair? I think it is fair to say that the immigration judge described the biometrics process from the way that the immigration judge understood the biometrics process, the role that the court would have in the biometrics process, and provided helpful guidance to Ms. Cortez Tellez on what to do. And wasn't that form provided in during the course of that discussion? So there was a form provided. Didn't the court identify it as the EID form? In court, identified as the EID notice that was provided. But during the context of the biometrics discussion, that was when this form, whatever it was, was discussed. Is that correct? That's correct. And I would just draw the court's attention to the fact that the Board of Immigration Appeals has indicated that it does not know what an EID notice is. But even if Ms. Cortez Tellez, if the court finds that the form that's not in the record is sufficient to have triggered her biometrics process to her compliance, and that the judge's advisers were sufficient to require her to move forward, she can still win her case. She can win her case either under good cause, because she's demonstrated good cause, and the Board of Immigration Appeals abuses discretion in failing to apply all the necessary factors in finding good cause, or under the totality of circumstances test. So in a case of identical situation where an individual went in and described that they had forgot, the Board applied a totality of circumstances analysis, granted the exception, and remanded for additional proceedings. And I would like to reserve the remaining time for rebuttal. Of course. Thank you, counsel. We'll hear from the government. Good morning, your honors. My name is Nancy Friedman for the Attorney General. Can you hear me all right? Yes, can you hear us? Yes, I can. Thank you very much for the opportunity to appear remotely. I appreciate it. In this case, it's clear from the record that the Board did not abuse its discretion in denying the application as abandoned. What is an EID form? That's an acronym that stands for the Electronic Integrated Database that DHS uses for all kinds of law enforcement inquiries. So we don't know what form she was given? We do know because it's clear from the whole transcript and the discussion around it that she was given the form. And let me step back for one second. Could you finish that sentence before you move on? That she was given the form for what? I just wanted to clarify when we're talking about a form. It's not exactly a form. It's instructions. It's like pre-printed instructions that every petitioner gets when they need to get the biometrics done. It's not a form where you fill in your name and address and so forth. That's still a type of form. I guess you could call it that. I just want to clarify it's not one where you fill in your personal information. So why isn't that part of the record here? There's no requirement that the instructions be part of the record. And to be honest, I've never seen it included in any immigration hearing record that I've ever looked at. If this court were to ask you to provide a copy of the form, would you have any opposition to that? No, your honor. As a matter of fact, it's readily available on the DHS website of which this court can take judicial notice. It's on the government website. And when you look for it, it pops up. But certainly I would have no objection. And what does it say relevant to fingerprinting? Well, it's a form that's a couple pages long and it's entitled instructions for submitting certain applications in immigration court, etc. And it is, I think about five pages, four pages or so. And it says instructions for form I-589, asylum and withholding. It says send these three items to the address below. It tells the applicant what they need to send in. And then it says after these items are sent to the service center, you will receive a notice and so on and so on. And it just details all the steps that the applicant needs to follow. And that's what it's clear from the discussion in the and the judge answered them. I think Ms. Cortez was understanding. At the initial hearing in 2016, she didn't say, I don't understand. I don't speak English. Can you explain what I have to do again? It was clear she understood the instructions. And then when she came back for the merits hearing three years later, she was very honest. I think Ms. Cortez is a totally honest individual who said, I forgot. It's something I forgot, I guess. I mean, I didn't remember. And she does say, if as you say, she's totally honest and she blew it. Why isn't the proper remedy give her another shot? Well, I think that the immigration judge reasonably concluded that she had had three years already to follow up on this. And she actually didn't do anything. She took no action. She didn't make a phone call. She didn't ask a friend to help her translate. I mean, she says during the hearing when they're talking about her asylum application, the judge asked her, did anyone help you with this? She says, yes, my cousin helped me who speaks and reads English perfectly. So she didn't say, I tried to find someone to help me and I couldn't. Can I have more time? So the judge reasonably deemed the application abandoned as was within his authority. Counsel, when you say the petitioner did nothing, you're talking specifically about the biometrics requirement. Correct. Counsel represented she did a whole bunch of other things to complete her asylum application. I understand. Yes, I agree. So from the totality of the circumstances, would it be fair to say that she was diligent and she submitted other forms? I think that's fair. I think that's fair. That's exactly what happened. She submitted other forms. She filled out her application. But in the three years that transpired from her initial hearing until the merits hearing took place, she didn't take any action to follow up on the fingerprinting and the biometrics. And she said, the reason the judge asked her, why didn't you do it? And she honestly said, I forgot. Now, I just want to. Counsel, let me ask you this. What's our standard of review? Say again, Your Honor. What is our standard of review on this issue? You're reviewing the board's decision for an abuse of discretion here. And it's clear the board was well within their discretion here in affirming the immigration judge. But I'd like to go forward in time to after the hearing to when Ms. Cortez files her notice of appeal to the board. Now, I understand she was pro se. She's acting without an attorney. But it seems to me Ms. Cortez was capable and able to make herself clear. And in her notice of appeal, she says, I do not recall being told by the interpreter that I needed to submit fingerprints or where to do so. At the time, I was having a very difficult time with the pregnancy. I apologize for that. That's at the record at page 115. After that, after the notice of appeal was filed. What's your point? Because you said she was very honest. So, what's your point? My point is, Your Honor. My point is that when the petitioner, when Ms. Cortez through counsel files her appeal brief to the board, it comes up for the first time that she says, I got the wrong instructions. She does not submit her declaration. There is no declaration from Ms. Cortez saying, I got the wrong instructions. I didn't know what I needed to do. And that's why I didn't submit my prints. The record speaks loudly for what is not there. And what is not there are two things. Number one, there is no submission of those allegedly incorrect forms that she says she was hearing. The petitioner could have submitted the forms herself with her appeal to the board. She didn't do that. And the other thing that as Judge Sung asked about a little bit earlier, she did not submit her own declaration saying what had happened. It's just not there. We have only her bare assertion. And I referred the court to a case decided earlier this year, Flores-Santana, which talks about just the bare assertion from the petitioner. And that Flores-Santana says where Flores-Santana provides nothing beyond his bare assertion that he was not provided with the required instruction. He has not met his burden to show that the immigration judge erred. And also as was- I don't fully understand. I understand what you're saying as a matter of the law, and that may be decisive, but I must say I'm mystified that here we have a conceitedly honest woman who provides everything else that she's supposed to provide, but blows it and doesn't provide her fingerprints, her fingerprinting record. And I would have thought that any sensible or humane government agency would say, okay, go take care of the fingerprinting, and we'll discuss the merits. Why is that not the policy of your agency? Well, the regulations require good cause to be shown if you fail to get your biometrics done. And she wasn't able to do that, Your Honor, and that's the reason. Sorry, go ahead and finish your answer. Go ahead. She was not able to establish any good cause for why she failed to go forward with her obligation. It is her burden to get the biometrics done before the agency can, you know, proceed with any, you know, any of the forms of relief. In this case, her asylum application. I think petitioner's correct if she suggests that, you know, it was the government's burden. It was not. It was the petitioner's burden to go forward. And the petitioner here simply took no action. It seems like a harsh outcome, but of course, we have to look at the fact here that, you know, years had time to seek counsel, seek help, seek anything, but she just didn't do anything. Counsel, on this point of whether she showed good cause, you just noted that in her pro se notice of appeal, she indicated that she didn't recall receiving the instructions and that she was having a difficulty with her pregnancy at the time. In the BIA decision, I don't see anything addressing the latter part of that, which is that she was having difficulty with her pregnancy. Does the BIA abuse its discretion in not considering all her bases for cause? Well, the board did not abuse its discretion. I think it's clear that the board reviewed the that there was any evidence in the record that the board ignored. They're not required to mention each and every part of the record, but the board clearly looked at the transcript of the hearing of her lack. The board did mention her lack of declaration and so forth and concluded that she had no good cause and that the application was properly deemed abandoned and if the court has no further questions, I'll submit on the brief. I have a question. On the issue about the pregnancy, was there a declaration regarding that or was that just in the brief from the attorney? There's no declaration, your honor. That's in the notice of appeal that the We don't know at what point in the three years the pregnancy occurred. We don't know if it was early in the three years, in the middle of the three years, or at the end of the three years. We don't know, do we? We do not know. And that information was not, any information about a pregnancy or her physical health or anything was not in front of the immigration judge. Because she didn't, she didn't present that at the time. So thank you very much, your honors. Thank you. Rebuttal. Thank you, your honor. Good cause is a multi-factor analysis in a precedent decision that the attorney general from 2018, the attorney general says, quote, immigration judges and the board should take a similar approach when a provision uses the term good cause, but does not define it. And that similar approach is a multi-factor analysis. But it's still an abuse of discretion standard of review. That is correct. And so if this case could come out either way, how can the board abuse this discretion? In order for the court to have, in order for the board to have to abuse this discretion, in my view, there has to be only one way it could come out and the board didn't come out that way. And here, your honor, it's an abuse of discretion because the board did not consider all of the factors, considered only one factor. And the factor was that she forgot. But there are other factors. For example, the forgot goes to the diligence question. And diligence is but one factor on the particular notice of, so diligence is one factor and it goes only to the question of the biometrics. The confusion regarding it, her questioning, that the government was not seeking, the government was not seeking the government's position at the time. They were not seeking, they did not ask for an order of abandonment. The judge heard the case. So to go to Judge Rakoff, the judge heard the case, all the testimonies on the record. The judge, the immigration judge issued an alternative decision denying the asylum claim, but the merits of that asylum claim were not before this court because the board did not rule on it. So the judge did exactly what you suggested. I'll go ahead and hear the case and heard the case. So diligence is just one factor. And Ms. Cortez-Atay got a little beat up there about that she didn't do anything for three years. She did a lot actually. And the record shows that she- To be fair, she didn't do anything with the biometrics. That was the point that the government made. Not that she didn't do anything, but clarified that she didn't do anything about fulfilling her requirement to be fingerprinted. I agree with that, your honor. But that's because she thought that was going to happen at the day of the hearing. And I would note just finally, the final minute that I have here, the instructions that were read that Ms. Friedland described, those aren't in the record. The title is not an EID notice. And those instructions were never actually given to the judge. They're only given to the petitioner. On my final note, unless there's other questions from the court. I have a question. At no time, as I understand it, did she actually ask, judge, I made a mistake. I should have done this. Give me another month and I'll go have my fingerprinting or anything like that. Right? She didn't ask for the opportunity to correct her mistake. I don't know about that, your honor. What does the record say? Yeah. I actually, I'm quickly scanning my memory for what I think in the conversation that I recall. I don't know if that's so, your honor. And I apologize that I can't directly answer that. My recollection of the conversation from the record is that she's like, I'm sorry, I forgot. And I think the indication, like what could be taken from a reasonable inference from a prosaic individual at the time is like, look, what can I do to make that right? Well, I mean, to me, that's not an question because, for example, if someone asked to amend a complaint and the judge denies it, but where there's no harm, no prejudice to amending the complaint, we have repeatedly held that's an abuse of discretion. But if the request isn't made, then it's hard to see how it's an abuse of discretion. So I'm just looking quickly at the transcripts from pages 174 to 176. From Ms. Cortez-Tejas' perspective, she was answering a question from the immigration judge. So why did you not complete your biometrics? Honestly, it's something that I did forget, I guess. I mean, I didn't remember it. As a matter of fact, I even thought that maybe it was on this day that I was going to have my fingerprints and all that. And so from her, it was confusion on my part. Totally, I accept it. And then the judge moves on. And I don't know that the judge, from an unrepresented prosaic individual's perspective— tell me what to do and I'll do it. Yes, Your Honor. And if I don't know, I'm over time. I do have a question. I think we'll give you extra time. When the IJ first asked Ms. Cortez-Tejas why she didn't have the biometrics taken, she just said she forgot, right? Did she bring up any of the other reasons that she then listed in her notice of appeal? She did not at that time, Your Honor. In her notice that she wrote pro se of notice of appeal, she did indicate, so it's at page 115 of the record, that at the time that she was doing it, she wrote the words, at the time of the biometrics. So this goes to your question, I think, Judge Rawlinson. Was there any indication of the timing of the pregnancy question, of the difficulties of the pregnancy? So she wrote in her statement, at the time that was happening. But for the entire three years, you take that to mean for the entire three years that the pregnancy complications were a factor? That it would have mattered at the time. I believe what she, well, I mean, I would be taking an inference from what she wrote when she wrote at the time. And I would take the inference that she understood that at the time of the hearing, she needed to have her biometrics. It was at that moment in time. And I think that goes to the written instructions. I understand that Ms. Friedland read this form that indicated that it's available on the DHS website somewhere. None of that was provided to her. None of that information was told to her. There's no written instruction. And even if there was... But there was something given to her. That is correct, Your Honor. Even if that information, she would still be able to win this petition and remand for the board to apply the good factors analysis as laid out in the precedent decision of LABR, or follow the totality of circumstances test in the exactly similar case in a matter of LHA. Thank you, Your Honor. Thank you, counsel. Thank you to both counsel for your arguments. Case just argued is submitted for decision by the court.
judges: RAWLINSON, SUNG, Rakoff